**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| STEVEN GRADY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:25-CV-01640-SPM |
| DELAWARE NORTH COMPANIES SPORTSERVICE, INC., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended

Complaint. (Doc. 18). The parties have consented to the jurisdiction of the undersigned United

States Magistrate Judge pursuant to 28 U.S.C.§ 636(c)(1). (Doc. 30). For the following reasons,

the motion will be granted in part and denied in part.

## I.    BACKGROUND

Defendant Delaware North Companies Sportservice, Inc. ("Delaware North" or

"Defendant") manages and controls all food and beverage operations at Busch Stadium, including

cashier staffing, tip handling, and vendor oversight.  Am. Compl. ¶ 15. Plaintiff Steven Grady

worked for Cohn's Kosher Cart and later Stuie's Coney Island Kosher Deli, LLC, a food vendor

at Busch Stadium that was subject to Defendant's oversight. *Id. at* ¶ 14-17.  Like other food vendor

workers at Busch Stadium, Plaintiff took customer orders, prepared food, and handed food to

customers before customers proceeded to the cashier to pay. *Id.* at ¶ 29. Each of the approximately

one hundred food concession stands at the stadium was assigned a dedicated cashier by Delaware

North to operate the stand's POS terminal. *Id.* at ¶ 31. The cashiers performed only payment-

1

processing duties and did not take orders, prepare food, or provide customer service. *Id.* at ¶ 32. Plaintiff alleges that because cashiers performed no tipped duties, they were not "tipped employees" under 29 U.S.C. § 203(t). *Id.* at ¶ 36. The cashiers were employees of Delaware North, not employees of any vendor. *Id.* at ¶ 33.

Customers left cash or electronic tips at the POS terminal immediately after receiving service from stand workers. *Id.* at ¶ 34. Tips entered at the POS were processed through Delaware North's payment infrastructure, making Delaware North the entity that received and controlled the tips. *Id.* at ¶ 5. These tips were earned by stand workers, not by Delaware North cashiers. *Id.* at ¶ 35. Delaware North imposed a mandatory, stadium-wide policy requiring that all tips left at any stand be kept exclusively by the Delaware North cashier assigned to that stand. *Id.* at ¶ 37. Because Delaware North's POS configuration routed all gratuities into Delaware North's control, vendor employers had no technical or practical ability to receive or distribute the tips earned by their own stand workers. *Id.* at ¶ 38. As a result, stand workers across all vendor-operated stands received none of the tips earned for their service. *Id.* at ¶ 39. An owner of the stand Plaintiff worked for questioned Delaware North management about the tip policy and was told, "The cashier gets the tips." *Id.* at ¶ 40. The owner objected and requested that his employees receive their share of tips, but Delaware North refused to change its policy. *Id.* at ¶ 40.

Plaintiff alleges that because Delaware North controlled payments systems, staffing of cashiers, access to work, enforcement of tip policies, and distribution of gratuities across all stands, and thereby exercising direct control over a core component of workers' compensation, Delaware North jointly employed Plaintiff and all similarly situated vendor workers within the meaning of 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2. *Id.* at ¶ 41. Defendant does not dispute that it was Plaintiff's joint employer.

2

In Count I, Plaintiff alleges that Delaware North violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(m)(2)(B), by unlawfully retaining employee tips and diverting them to other employees who did not earn them. Plaintiff alleges that he and other stand workers were entitled to retain the tips they earned and that Delaware North violated § 203(m)(2)(B) by collecting tips earned by vendor-employed stand workers and diverting those tips exclusively to its own cashiers. *Id.* at ¶¶ 46-47. Plaintiff further alleges that because Delaware North was not the wage-paying employer of the stand workers, it cannot rely on 29 C.F.R. § 531.54(d)'s exception permitting employers who pay full minimum wage to their tipped employees to impose a tip pooling arrangement that includes employees who do not customarily and regularly receive tips. *Id.* at ¶ 48. Plaintiff further alleges that Delaware North's policy was not a lawful tip pool, as 100% of pooled tips went to a single participant. *Id.* at ¶ 49. He alleges that a tip pool that assigns all gratuities to one participant is tip diversion and violates § 203(m)(2)(B). Plaintiff further alleges that Delaware North's conduct was willful within the meaning of 29 U.S.C. § 255(a).

In Count II, Plaintiff alleges that Defendant violated the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.502, by diverting tips intended for Plaintiff and other stand workers.

## II.    LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may assert by motion that a pleading "fail[s]to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

3

Although "detailed factual allegations" are not required, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, but it need not accept the legal conclusions. *Iqbal*, 556 U.S. at 678. The Court must make "all reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019).

### III.  DISCUSSION

#### A.    Count I: Violation of the Fair Labor Standards Act

Section 203(m)(2)(B) of the FLSA states, "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."[1] 29 U.S.C. § 203(m)(2)(B).  For purposes of the instant motion, Defendant does not dispute that it was Plaintiff's joint employer and was thus subject to § 203(m)(2)(B). *See generally* Def.'s Mem. Supp., Doc. 19. It is also undisputed that the cashiers who ultimately received the tips were neither "supervisors" nor "managers." *See* Pl.'s Mem. Opp'n, Doc. 20, at 1. The parties' dispute concerns whether Defendant's policy of distributing the tips to the cashiers nonetheless constituted the

---

[1] The "tip credit" exception allows an employer to pay less than the full minimum wage if the difference is covered by the employees tips. *See, e.g.*, *Weinstein v. 440 Corp.*, 146 F.4th 1046, 1052 (11th Cir. 2025) (citing 29 U.S.C. § 203(m)(2)(A)). Application of the tip credit exception requires that the employee be a "tipped employee," that the employer inform the employee in advance that it intends to count a portion of the employee's tips toward the minimum wage, and that the employee must retain the tips he or she receives. *Id.* The tip credit exception provides an affirmative defense for an employer against a claim that it violated the FLSA by paying less than minimum wage. *Id.* at 1053.

Plaintiff does not allege or argue that Defendant takes a tip credit or that Plaintiff receives less than the full minimum wage.

impermissible keeping of tips in violation of § 203(m)(2)(B).

Defendant argues that it did not "keep" any tips because it did not ultimately retain the tips but instead distributed the tips to the employees who received them—the cashiers. Defendant argues that this is expressly permitted by the following regulation:

> **An employer may exert control over an employee's tips only to distribute tips to the employee who received them**, require employees to share tips with other employees in compliance with § 531.54, or, where the employer facilitates tip pooling by collecting and redistributing employees' tips, distribute tips to employees in a tip pool in compliance with § 531.54.

*Id.* § 531.52(b)(1) (emphasis added). Defendant does not argue that its policy was a permissible tip sharing arrangement or "tip pool." [2]

Defendant's argument is unpersuasive because it presumes that the cashiers were the "employee[s] who received" the tips even though Plaintiff alleges facts to the contrary. Plaintiff alleges that he and other stand workers "performed all customer-facing service that earned gratuities—taking orders, preparing food, and handing food directly to customers." Am. Compl. at ¶ 2. He alleges that customers left cash or electronic tips at the POS terminal immediately after receiving service from stand workers. *Id.* at ¶ 34. He alleges that the tips at issue were "earned by stand workers, not by Delaware North cashiers." *Id.* at ¶ 35. He further alleges that the cashiers "performed only payment-processing duties and did not take orders, prepare food, or provide customer service." *Id.* at ¶ 32. At this stage, when the Court must draw all reasonable inferences

---

[2] *See* Reply, Doc. 24, at pp. 5-6 ("Plaintiff does not allege Defendant requires employees to share tips or facilitates tip pooling, both of which would require compliance with § 531.54(d). Therefore, § 531.54(d) is inapplicable.") (citation omitted). Given that Defendant has acknowledged that Plaintiff does not allege the existence of a tip pooling or sharing arrangement and that § 531.54(d) is inapplicable here, the Court finds that § 531.54(d) does not assist the Court in determining whether Defendant's policy violated § 203(m)(2)(B).

in favor of Plaintiff, the Court finds these factual allegations are sufficient to support a plausible inference that the tips at issue were intended for, and earned by, Plaintiff and other stand workers and were not "received by" Delaware North cashiers.[3]

To the extent that Defendant argues that it did not "keep" the tips because it distributed them rather than ultimately retaining them for itself or giving them to managers, the Court also finds that argument unpersuasive. Section 203(m)(2)(B) broadly prohibits the keeping of tips "for any purposes," not just keeping tips for corporate profit or distribution to managers. The regulation on which Defendant relies explains the permissible purposes for which an employer may exert control over tips without violating § 203(m)(2)(B), and the policy (as alleged) does not fall within any of those permissible purposes. The Court thus agrees with Plaintiff that the policy falls within § 203(m)(2)(B)'s broad prohibition against keeping tips.

The plain meaning of the term "keep" also supports Plaintiff's position. The relevant dictionary definitions of "keep" include "to retain in one's possession or power" and "to refrain from granting, giving, or allowing." Keep, Merriam-Webster, https://www.merriam-webster.com/dictionary/keep (last visited July 16, 2026).[4] These definitions do not require *permanent* retention. Plaintiff has plausibly alleged that Defendant "kept" Plaintiff's tips both by "retain[ing] in [its] possession or power" those tips (even temporarily) and by "refrain[ing]

---

[3] The Court acknowledges that Plaintiff did not actually physically receive the tips at issue, but that appears to be only because of Defendant's policies precluding Plaintiff from doing so. *See* Am Compl. ¶¶ 4-5. It would defeat the purpose of § 203(m)(2)(B) to find that because an employer's policies successfully prevented an employee from physically receiving tips he earned, the employer cannot be liable for keeping those tips.

[4] The FLSA does not define the term "keep." "In the absence of a statutory definition, [the court] will give a term its ordinary dictionary meaning." *Union Pac. R.R. Co. v. Surface Transportation Bd.*, 863 F.3d 816, 825 (8th Cir. 2017) (citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012)).

6

from . . . allowing" Plaintiff to obtain the tips he earned, instead giving those tips away to an entirely to a different set of employees. At least one other court has recognized that an employer may violate the prohibition on keeping tips even if it diverts the tip money to others rather than permanently retaining it. *See Paschal v. Perry's Restaurants Ltd.*, No. 1:22-CV-27-RP, 2025 WL 3215363, at \*15 (W.D. Tex. Nov. 10, 2025) ("The statute prohibits the employer from 'keep[ing] tips received by its employees *for any purposes*,' which includes tips that were kept for the purpose of subsidizing the restaurant's labor costs by distributing the tips to ineligible employees.") (quoting 29 U.S.C. § 203(m)(2)(B)). An employer cannot violate the FLSA but avoid liability simply because it diverted the funds to a third party or used the funds to pay rent, cover restaurant expenses, or compensate other employees. The statute covers tips that have been 'kept' but used by the restaurant to cover costs.").

For all of the above reasons, the Court finds Plaintiff has stated a claim under Section 203(m)(2)(B), and Defendant's motion to dismiss will be denied.

## B.  Count II: Violation of the Missouri Minimum Wage Act

In Count II, Plaintiff alleges that Defendant violated the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.502, by diverting tips intended for Plaintiff and other stand workers. Defendant argues that Plaintiff fails to state a claim under this provision.

The Court agrees that Plaintiff has not stated a claim under § 290.502. Section 290.502 states that "every employer shall pay to each employee wages at the rate of $6.50 per hour, or wages at the same rate or rates set under the provisions of federal law as the prevailing federal minimum wage applicable to those covered jobs in interstate commerce, whichever rate per hour is higher." Mo. Rev. Stat. § 290.502.1. Plaintiff's Amended Complaint contains no factual allegations about the hourly rate he was paid, the hours he worked, or the amount of pay he

7

received. Plaintiff alleges no facts from which the Court could infer that Defendant violated § 290.502.

In his response, Plaintiff does not argue that he has stated a claim under § 290.502 (the provision cited in the Amended Complaint). Instead, Plaintiff argues that Defendant misunderstands the claim and that Plaintiff has instead stated a claim under Mo. Rev. Stat. § 290.080, which provides that "[a]ll corporations doing business in this state . . . shall pay the wages and salaries of their employees as often as semimonthly, within sixteen days of the close of each payroll period," and Mo. Rev. Stat. § 290.527, which provides for a private right of action for employees whose employers pay them less wages than those to which he or she is entitled under sections 290.500 to 290.530. Plaintiff argues that the tips constituted wages earned by stand workers and that Defendant's policy deprived them of those wages. Plaintiff also argues that Missouri law recognizes misappropriation of earned gratuities as recoverable wages.  In its reply, Defendant argues that the Amended Complaint fails to state a claim under these statutes as well.

The Court agrees with Defendant that Plaintiff has also not stated a claim under Mo. Rev. Stat. § 290.080 or Mo. Rev. Stat. § 290.527. In the Amended Complaint, Plaintiff does not allege that Defendant failed to pay any "wages" or "salaries" to Plaintiff, nor does he allege that the tips constituted "wages" or "salaries" of the stand workers. The allegations that address "wages" are Plaintiff's allegations that Defendant was "not the wage-paying employer" of stand workers," Am. Compl. ¶ 8, and that it "did not pay wages to stand workers and therefore had no legal basis to reallocate their gratuities," *id.* at 48.  Plaintiff may not add  the factual allegations in its complaint through its response to the motion to dismiss. *See Gallagher v. City of Clayton*, 699 F.3d 1013, 1022 (8th Cir. 2012)  ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ."). Plaintiff also cites no authority to support his argument

8

that Missouri law recognizes gratuities as recoverable wages.

For the above reasons, Defendants' motion to dismiss Count II will be granted, and Count II will be dismissed without prejudice.

## IV.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**. With respect to Count I, the motion is **DENIED**. With respect to Count II, the motion is **GRANTED**, and Count II is **DISMISSED**, without prejudice.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this **16th** day of **July**, **2026**.

9